IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **In re:**<br><br>**TRANSDATA, INC. SMART METERS PATENT LITIGATION** | Case No. 5:12-ml-02309-C |

### OG&E's MOTION TO STAY LITIGATION AND BRIEF IN SUPPORT

Defendant Oklahoma Gas & Electric Co. ("OG&E") respectfully moves to stay this litigation due to the U.S. Patent and Trademark Office's pending *ex parte* reexaminations and its likely institution of *inter partes review* of the validity of the three patents at issue. OG&E believes these recent events warrant a stay for three reasons.

**First**, these PTO proceedings likely will dispose of, or greatly simplify, TransData's case against each defendant; because this is an MDL proceeding, the efficiencies from permitting the PTO proceedings to play out before resuming litigation extend not merely to OG&E's case but to each other district court case currently consolidated before this Court.

**Second**, TransData will not suffer undue—or any—prejudice from a stay, because it seeks only money damages and not a preliminary injunction. Every remedy at law or in equity that is available to TransData now will remain available after a stay.

**Third**, the case is only in the expert discovery stage, and has not yet proceeded to the dispositive motion stage.

In the past two months, *all* claims that TransData has selected for assertion against each defendant ("Asserted Claims") have been newly rejected by the Patent Office in *ex parte* reexaminations of each TransData patent-in-suit; if the PTO maintains this position at the conclusion of the reexams, it will dispose of each of the district court cases.

Moreover, in deciding to grant the *ex parte* reexams and subsequently issue initial rejections of all Asserted Claims, the PTO expressly considered and overcame the sole argument TransData previously used to avoid rejection in the prior reexams. Specifically, while TransData escaped the *prior* reexams by asserting that the claim term "electric meter circuitry" was limited to digital electric meters, and excluded electromechanical meters, the *current* re-exams are premised on digital electric meter prior art. The PTO grasped the significance of the newly submitted prior art and assessed its importance bluntly. For example, in its decision to grant reexamination of the '699 patent, the PTO noted:

> The Challenged Claims were allowed in the prior reexamination based on the distinction between internal antennas in digital meters and electromechanical meters. The CellNet Brochure shows that the same radio transmitters could be used in both digital and electromechanical meters. Thus, the CellNet Brochure not only demonstrates that radio transmitters in digital meters were known, but also that ***there is no patentable distinction between the use of a radio transmitter in a digital meter versus an electromechanical meter***. . . . [¶] [T]he CellNet Brochure discloses the very same feature that the Patent Owner asserted was patentable (internal antennas in digital electric meters) and the Examiner agreed that it was missing in the prior art of record . . . .

*See* Exh. A at 7-8 (emph. added). Similarly, the PTO described other prior art references submitted in the current reexams as "specifically disclos[ing] the features that the Examiner indicated was missing in [the] prior art of record during the '432 reexamination of the '699 patent." *Id*. at 7.

Still further, petitions for *inter partes review* of all Asserted Claims of the patents-in-suit have been filed by third-party meter manufacturer General Electric Co. (While GE makes the meter portion of OG&E's accused meters, the IPRs were filed by GE alone.) The IPR petitions also are premised on prior art including digital electric meters.

The IPR petitions seek to invalidate *every* claim of the TransData patents, including all Asserted Claims.

These recent developments satisfy the three-prong test used to decide whether to stay patent litigation pending completion of PTO proceedings. As such, OG&E respectfully moves to stay this litigation until completion of the *ex parte* reexaminations and *inter partes reviews* of the patents-in-suit.

## BACKGROUND

### A. The PTO rejects all Asserted Claims in the *ex parte* re-exams, as the prior art discloses digital meters with internal antennas.

On May 15, 2014, GE filed a request for *ex parte* re-examination of the '699 Patent. *See* Exh. B. GE also requested reexamination of the '713 patent on May 19, and the '294 patent on May 27. On August 19, the PTO issued a non-final rejection of the Asserted Claims of the '699 Patent on the four grounds GE proposed: anticipation by either the AMR Report or the Meek reference, and obviousness by either the AMR Report in view of the CellNet Brochure or the Meek reference in view of the AMR Report. *See* Exh. C at 3, 10, 12, 15 (rejecting claims and referencing GE's grounds).

For the Court's reference, here are descriptions of AMR, Meek, and CellNet:

- The AMR Report is a 1993 publication by Alexander & Assocs. titled, "Automatic Meter Reading: The Report for Electric Utilities." As the PTO noted in granting reexam of the '699 patent, "The AMR Report discloses digital electric meters with 'electric meter circuitry' and the claimed internal antenna. The AMR Report discloses the use and commercial availability of digital electric meters (also called solid-state meters)." Exh. A at 6.

- The Meek reference is a 1994 publication by the Institute of Electrical Engineers titled, "Electronic Watt-Hour Meter with Integral VHF Transmitter: Trial Experience in the UK." As the PTO noted, "Meek discloses the results of

    a large trial of <u>electronic</u> watt-hour meters with internal antennas. [¶] Meek disclosed that the digital meter 'includes an integral radio transmitter and antenna.'" *Id.* at 7 (orig. emph.). "Meek discloses the very same type of antenna, i.e. internal antenna in digital meters disclosed in the '699 patent and [that the] Examiner indicated was missing in [the] prior art of record during the '432 reexamination of the '699 [patent]…." *Id.*

- The CellNet Brochure is a 1996 publication titled, "CellNet Wireless Data Network: how it works." As the PTO noted, "The CellNet Brochure shows that the same radio transmitters could be used in both digital and electromechanical meters. Thus, the CellNet Brochure not only demonstrates that radio transmitters in digital meters were known, but also that there is no patentable distinction between the use of a radio transmitter in a digital meter versus an electromechanical meter." *Id.* at 7-8.

The Patent Office also rejected the Asserted Claims of the '713 Patent on the grounds proposed by GE. *See* Exh. D at 3 (rejection based on AMR Report) and 13-14 (rejection based on AMR Report and Meek reference). On September 24, the PTO, with a different examiner, rejected all Asserted Claims of the '294 patent. *See* Exh. E.

Notably, as the PTO explained, its initial decision to allow TransData's claims to issue from the earlier reexamination had been based on "the distinction between internal antennas in digital meters and electromechanical meters." Exh. A at 7. That distinction, originally proposed by TransData, now has been expressly rejected by the PTO. *Id.* at 8 ("there is no patentable distinction between the use of a radio transmitter in a digital meter versus an electromechanical meter"). Furthermore, the *ex parte* reexams and IPR petitions are expressly premised on digital electric meters. *See*, *e.g.*, Exh. F (PTO action granting '713 Patent *ex parte* reexam) at 7 (describing AMR Report and Meek reference as disclosing internal antennas used with digital electric meters); Exh. G ('713 IPR

petition) at 32 (asserting that digital electric meters are disclosed by Bush reference); *id.* at 42 (asserting that AMR Report disclosed digital electric meters).

The PTO has continued to find further grounds for rejecting TransData's Asserted Claims. Even after issuing the non-final rejections of the '699 and '713 patents discussed above, the PTO issued Supplemental Office Actions on September 26, adding more prior art references as bases for invalidating the Asserted Claims. *See* Exhs. H (Supplemental Action as to '699 Patent) and I (Supplemental Action as to '713 Patent).

### B.    GE petitions the PTO for *Inter Partes Review* of all Asserted Claims.

Following the PTO's initial rejection of the Asserted Claims of the '699 patent, GE filed a Petition for *Inter Partes Review* of all claims of the '699 Patent on August 25. *See* Exh. J. The petition explains that the four Asserted Claims of this patent are invalid on two grounds: they are anticipated by the Bush reference, and also rendered obvious by Bush in view of the Johnson reference. *See id.* at 23, 34-42, 50-51. Of course, the Bush reference discloses a digital electric meter.

Likewise, following the initial rejection of the Asserted Claims of the '713 patent, GE filed a Petition for *Inter Partes Review* of all claims of the '713 Patent. *See* Exh. G. The petition identifies two grounds of invalidity for each of the six Asserted Claims of that patent, based largely on the Bush reference and the AMR Report.

After rejection of the Asserted Claims of the '294 patent, on September 26, GE filed a Petition for *Inter Partes Review* of all claims of the '294 Patent. *See* Exh. K.

In an *Inter Partes Review*, a petitioner may ask the PTO to cancel one or more claims of an issued patent. *See* 35 U.S.C. §311(b). IPR proceedings are conducted by

the Patent Trial and Appeal Board, which "must expeditiously conduct IPRs." *e-Watch, Inc. v. ACTi Corp.*, 2013 WL 6334372, *5 (W.D. Tex. Aug. 9, 2013). Specifically, the PTO must render a decision whether or not to accept the IPR petition and institute an IPR within three months after receiving a patentee's response to the petition. *See* 35 U.S.C. §314(b) (time for decision by PTO). Moreover, the PTO must issue its final determination on the patent's validity within a year after the date the PTO instituted the IPR. *See* 35 U.S.C. §316(a)(11); 37 C.F.R. 42.100. Even if good cause exists, the PTO may extend this period only by six months. *Id.*

Thus, PTO action would be expected on each IPR by these dates:

| Patent | Decision Whether to Institute IPR | (If Instituted) Final Determination on Validity |
|---|---|---|
| 6,903,699 | February 25, 2015 | February 25, 2016 |
| 6,462,713 | March 16, 2015 | March 16, 2016 |
| 6,181,294 | March 26, 2015 | March 26, 2016 |

The main distinction between *ex parte* reexamination and *inter partes review* is the degree to which the petitioner may remain involved during the course of the proceeding. With *ex parte* reexamination, the petitioner's involvement ends with its filing of the petition for reexamination; even where (as here) the PTO grants the petition and institutes the reexamination, the petitioner may not participate further, and all further interaction during the reexamination occurs solely between the PTO and the patent owner. In contrast, with *inter partes review*, the petitioner remains involved during the entire process, and the proceeding is conducted as a sort of trial between the petitioner and the

patent owner. Specifically, the petitioner and the patent owner each must provide mandatory initial disclosures, may depose the other party's expert, and at the close of discovery, present their case at an oral hearing before a three-judge panel of the Patent Trial and Appeal Board. *See* 37 C.F.R. §§ 42.2, 42.51(a), (b)(1)(h), 42.70, 42.100.

## LEGAL STANDARD

A court has inherent power to control and manage its docket, including authority to order a stay pending the conclusion of a PTO proceeding. The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes of its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The fact that this motion seeks to stay coordinated cases has no bearing on the analysis. *See, e.g., In re Cygnus Telecomm'ns Tech., LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1025 (N.D. Cal. 2005) (staying coordinated multidistrict proceedings pending reexam). Indeed, there exists a "'liberal policy in favor of granting motions to stay' pending the outcome of a reexamination proceeding." *GII Acquisition, L.L.C. v. Cybernet Sys. Corp.*, 2014 WL 4209928, *1 (E.D. Mich. 2014) (cites omitted).

"When deciding whether a matter should be stayed pending reexamination of a patent, the Court should consider: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id.*; *accord e-Watch*, 2013 WL 6334372 at *6.

## ARGUMENT AND AUTHORITIES

In the new *ex-parte* reexams, the PTO has rejected all Asserted Claims of the three patents-in-suit, discarding the very argument that TransData asserted to overcome the rejections in the prior reexams. These reexams suggest the PTO likely will accept the new IPRs and expeditiously invalidate all three patents. Allowing these proceedings to run their courses will conserve judicial resources by simplifying and possibly eliminating issues for trial, and will not unduly prejudice TransData, which is seeking only monetary damages from non-competing organizations.

### I.     A Stay Will Not Unduly Prejudice TransData.

The stay should be granted because it will not cause TransData *any* prejudice or injury. As a threshold matter, a stay will not deny it a monetary or equitable remedy. "[A]ll of Plaintiff's legal and equitable remedies will be available when the stay is lifted; a stay does not foreclose Plaintiff from any remedy." *LMT Mercer Group, Inc. v. McFarland Cascade Holdings, Inc.*, 2011 WL 2039086, *9 (D.N.J. 2011). Indeed, as the Federal Circuit recently stated, in reversing the denial of a request for a stay pending PTO review, "A stay will not diminish the monetary damages to which [a plaintiff] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 2014 WL 3360806, *9 (Fed. Cir. 2014); *accord GII Acquisition*, 2014 WL 4209928 at *2-3 (granting stay pending completion of *ex parte* reexam). Any remedy currently available to TransData, in law or equity, will remain available after final resolution of the PTO proceedings.

Furthermore, the parties' legal costs may be significantly reduced or eliminated by halting litigation—including expert depositions, MSJ proceedings, and trial—until the PTO decides whether any of the Asserted Claims are valid. Absent a stay, we will waste significant time, money, and effort litigating claims that may be canceled or narrowed. As one court noted, "It would be an egregious waste of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding." *EchoStar Techs. Corp. v. Tivo, Inc.*, 2006 WL 2501494 at *4 (E.D. Tex. 2006).

Additionally, reexams "have priority over all other cases." Exh. L (PTO's Manual of Patent Examining Procedure (MPEP)) at § 2261. The PTO must conduct the reexam proceedings with special dispatch, particularly in light of the concurrent litigation. *Id.*; *see also id.* §§ 2263, 2286 (provision for expedited proceedings). As for IPRs, as discussed above, the final decision of the Patent Trial and Appeal Board must be entered within one year of its decision to institute an IPR, a decision that itself must be made within six months of the petition. *See* 35 U.S.C. §316(a)(11). As summarized above, PTO decisions on whether to institute an IPR are expected before March 26, 2015, and final decisions on validity would be expected before March 26, 2016.

Even if some prejudice could be found based on the short delay, "It is not enough for Plaintiff to show prejudice; rather, any prejudice must be *undue*." *Canatello, LLC v. Avigilon Corp.*, 2014 WL 2533407, *2 (D. P.R. 2014) (orig. emph.) (granting motion to stay litigation until completion of IPR filed by third party).

> [T]he delay caused by the *inter partes* review process, without more, does not justify denial of a stay. Several courts have rejected this argument. Rather, the *inter partes* review was designed to create efficiencies and proceed in a timely fashion. Thus, the length of the *inter partes* review alone does not establish prejudice.

*Employment Law Compliance, Inc. v. Compl., Inc.*, 2014 WL 3739770, *1 (N.D. Tex. 2014) (granting stay pending completion of IPR) (cites/quotes omitted). Courts have held similarly regarding the delay caused by ex parte reexams. *See, e.g.*, *Photoflex Prods., Inc. v. Circa 3 LLC*, 2006 WL 1440363, *2 (N.D. Cal. 2006) ("delay inherent to the reexamination process does not constitute, by itself, undue prejudice").

Finally, a short delay to await resolution of the reexams would pale in comparison to TransData's delay in bringing suit—a factor courts have deemed important. Indeed, in June 2001, TransData asked the PTO to expedite examination of the eventual '713 patent because another company (SmartSynch) had a "metering product on the market that infringes" the '713 patent. Exh. M (Declaration submitted by TransData in support of request to PTO) ¶¶ 1-4. Yet TransData waited until August 2011 to allege infringement of the '713 patent by "electric meters with SmartSynch, Inc. wireless modules." Exh. N (TransData complaint filed against Alabama Power Co.) ¶23. Having sat on its purported rights for a decade, TransData will not be prejudiced by staying the case to allow the PTO proceedings to conclude. *See VirtualAgility*, 2014 WL 3360806 at *9 ("We also note that [plaintiff] . . . waited nearly a year after the '413 patent issued before it filed suit against Defendants. [This fact and its failure to move for preliminary injunction] weigh against [plaintiff's] claims that it will be unduly prejudiced by a stay.").

**II.     A Stay Will Narrow The Issues And May Obviate The Need For Litigation.**

A stay also is warranted because, following the reexams, TransData's district court cases likely will be (1) rendered moot; (2) involve claims with substantially reduced scope; and/or (3) involve fewer invalidity arguments, with the PTO proceedings having resolved such arguments with respect to the art submitted in the IPRs and reexams. As with the prior reexams, in which TransData's asserted claim construction changed the prior art that may be at issue, the new reexams likely will result in either invalidation of all claims or new direction on how the litigation must proceed. As one court concluded, "even if some claims remain, neither the parties nor the Court can know which might survive, making continuation of this suit an exercise in conjecture." *GII Acquisition*, 2014 WL 4209928 at *3. Granting a stay will conserve judicial resources, simplify the issues for trial, and avoid the potential for duplicate proceedings. (To further the efficiency, OG&E agrees to be bound by the Patent Office's rulings on the prior art on which the *ex parte* reexams and IPRs are premised.)

In a similar case, the Northern District of Texas granted a defense motion to stay litigation pending the PTO's decision whether to institute an IPR:

> [W]aiting for the PTO's decision will clarify the scope of issues in this case and could eliminate the need for a trial altogether. . . . In the event that the PTO grants [the IPR] petition . . . continuing the litigation would result in the unnecessary duplication of efforts and expenses to resolve the same issues. And, if the PTO denies the petition, the stay will be short.

*Employment Law Compliance*, 2014 WL 3739770 at *2 (cites/quotes omitted).

Even if the Patent Office invalidates fewer than all Asserted Claims, the scope of MSJ motions and trial will be altered significantly, and likely narrowed. Courts agree

that "if the reexamination proceeding[s] should narrow *any* of the asserted claims of the [patents-in-suit], the scope of th[e] litigation may be significantly simplified." *Ho Keung Tse v. Apple Inc.*, 2007 WL 2904279, *3 (N.D. Cal. 2007) (emph. added); *accord, e.g.*, *e-Watch*, 2013 WL 6334372 at *7 ("if the USPTO invalidates any of the three patents-in-suit at issue or changes the scope and terms of any claim, the matters at issue in this Court will change") (granting stay pending completion of IPR filed by a third party).

Allowing the litigation to continue in parallel with the reexams creates the risk of inconsistent results. If the Court finds that the patents-in-suit are not invalid, its finding is not binding on the PTO, which could reach the opposite conclusion. *See Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996). It would be pointless to litigate patent validity here, when any result could be mooted by the PTO.

The fact that the PTO has not decided whether to grant the IPRs should not affect the analysis. The PTO already granted GE's petitions for *ex parte* reexamination of all Asserted Claims and has issued initial rejections of each Asserted Claim. Acceptance and rejection of the claims in the *ex parte* reexams provide a strong indication that the PTO will grant the IPR requests. These decisions place this case in a different stead than those in which the only basis for a stay is that IPRs were filed. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 2014 WL 3736514 (E.D. Tex. 2014) (deferring decision on motion); *Freeny v. Apple Inc.*, 2014 WL 3611948 (E.D. Tex. 2014) (denying motion without prejudice). But even then, many courts have granted stays based on the fact that an IPR (or related proceeding) had been filed, even by a third

party.  *See, e.g.*, *TAS Energy, Inc. v. San Diego Gas & Elec. Co.*, 2014 WL 794215 (S.D. Cal. 2014); *Intertainer, Inc. v. Hulu, LLC*, 2014 WL 466034 at *1 (C.D. Cal. 2014).

### III.     The Stage Of The Proceedings Makes A Stay Appropriate.

This is a good stage of the action for a stay.  Expert depositions are ahead; MSJ motions remain to be drafted, argued, and decided; and trial is not yet set.  As such, a stay will not alter the trial calendar, nor will it render meaningless any dispositive motion hearing or consideration by the Court of dispositive motions not yet filed or even drafted.  And in the event claims are reduced, amended, or eliminated during reexamination or the IPRs, a stay will avoid the need for new expert depositions or revised reports that account for changed claim scope.

### IV.     The MDL Nature of This Case Makes A Stay Appropriate

Moreover, because this is an MDL proceeding, the efficiencies of a stay are multiplied and the timing of the stay is particularly propitious.

Because this is an MDL, even after summary judgment, the majority of cases will need to be sent back to their home districts.  Granting a stay now before the cases are redistributed ensures equal treatment for all cases.  All cases would be stayed for the same duration by this Court, avoiding the possibility for disparate treatment by the trial courts in the respective home districts, *e.g.*, some trial courts staying their respective cases and other trial courts proceeding to trial.

Furthermore, avoiding litigating further in the face of claims that may change or disappear during the PTO proceedings will benefit not only this Court but all the home district courts.  Absent a stay, the home district courts could be preparing for trial or in

the middle of trial when the PTO invalidates some or all of the claims; in such case, the proceedings conducted in the district courts up to that time would have been wasted, and any future expert work that would be needed in view of the changed claims would no longer be coordinated by this Court as the MDL court, but could proceed inefficiently or at least differently in each of the different district courts.

**V.     Several Opportunities Will Arise to Reassess the Stay**

The Court will have several opportunities to reassess the stay throughout the duration of the PTO proceedings. For example, at the conclusion of the IPRs—required to occur within less than eighteen months after their respective filing dates—the Court could reassess whether or not to maintain the stay for the duration of the *ex parte* proceedings, including any appeal by TransData of the results thereof. We are confident the parties will monitor the progress of the PTO proceedings and regularly update the Court as to the status at the PTO.

**CONCLUSION**

For these reasons, OG&E respectfully asks this Court to enter an order staying the proceedings pending completion of the PTO's *ex parte* reexaminations and *inter partes reviews* of the asserted claims of the three patents-in-suit.

Respectfully submitted,

*/s/ John A. Kenney*
John A. Kenney, OBA #4976
McAfee & Taft, A Professional Corporation
211 N. Robinson
Oklahoma City, Oklahoma 73102
(405) 552-2244
(405) 235-0439 (Fax)
john.kenney@mcafeetaft.com

R. Paul Yetter, *pro hac vice*
Thomas M. Morrow, *pro hac vice*
Christopher R. Johnson, *pro hac vice*
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)
pyetter@yettercoleman.com
tmorrow@yettercoleman.com
cjohnson@yettercoleman.com

Kevin J. Terrazas, *pro hac vice*
WEISBART SPRINGER HAYES, LLP
212 Lavaca, Suite 200
Austin, Texas 78701
(512) 652-5780
(512) 682-2074 (Fax)
kterrazas@wshllp.com

**ATTORNEYS FOR DEFENDANT**
**OKLAHOMA GAS & ELECTRIC COMPANY**

### CERTIFICATE OF CONFERENCE

On October 15, 2014, I personally conferred with counsel for plaintiff regarding the above motion and was advised that plaintiff opposes it.

Additionally, OG&E has discussed the motion with counsel for all other co-defendants, and was advised that the co-defendants do not oppose the motion.

/s/ *Thomas M. Morrow*
Thomas M. Morrow

### CERTIFICATE OF SERVICE

I certify that a copy of this document has been served on all counsel as listed below on this 21st day of October, 2014, via the Court's ECF system.

| | |
|---|---|
| Rob F. Robertson, OBA #12455 | Phillip B. Philbin (*pro hac vice*) |
| Gregory T. Metcalfe, OBA #19526 | Jamie McDole (*pro hac vice*) |
| GABLEGOTWALS | HAYNES AND BOONE, LLP |
| 211 North Robinson Ave., Suite 1500 | 2323 Victory Avenue, Suite 700 |
| Oklahoma City, Oklahoma 73102-7101 | Dallas, Texas 75219 |
| (405) 235-5500 \| (405) 235-2875 (fax) | (214) 651-5000 \| (214) 651-5940 (fax) |
| rrobertson@gablelaw.com | phillip.philbin@haynesboone.com |
| gmetcalfe@gablelaw.com | jamie.mcdole@haynesboone.com |

/s/ *Pamela Wofford*
Pamela Wofford