IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

IN RE: TRANSDATA, INC. SMART )
METERS PATENT LITIGATION, ) Case Number 12-ml-2309-C

## MEMORANDUM OPINION AND ORDER

Before the Court is TransData's Motion for Partial Summary Judgment of No Invalidity Relating to the Alleged ABB/CellNet and Innovatec Devices (Dkt. No. 518). Plaintiff seeks summary judgment that neither the ABB/CellNet Device nor the Innovatec Device invalidates any of the asserted claims of TransData's patents. During the course of these proceedings, Defendants have asserted at various times that an ABB solid state meter with CellNet Communications Module and/or an Innovatec Device rendered Plaintiff's patent for its meter invalid because the ABB/CellNet Device or Innovatec Device are prior art. Plaintiff challenges Defendants' ability to prove this point. Plaintiff argues that Defendants bear the burden to prove invalidity by clear and convincing evidence. According to Plaintiff, when the evidence on which Defendants rely is examined, it is uncorroborated and/or the documents on which they rely simply do not describe the structure or functionality of the devices in such a manner as to make obvious the claims in Plaintiff's patent. Thus, Plaintiff asserts Defendants cannot meet their burden.

To prove invalidity under 35 U.S.C. § 102, Defendants have the burden of proving by clear and convincing evidence that their prior art discloses each and every limitation of a patent claim, either expressly or inherently. Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1365 (Fed. Cir. 1999). In support of their allegations of invalidity, Defendants have offered the expert testimony of Dr. Richard T. Mihran, as well as deposition testimony from

a number of other witnesses. However, as Plaintiff has demonstrated, those witnesses have some interest in the outcome of this litigation. Indeed, each of the witnesses either worked for Defendants in this litigation or worked for companies who are currently indemnifying Defendants in this litigation or have been consultants working on behalf of the utility companies, such as the Defendants in this litigation.

Typically at the summary judgment stage, the Court does not weigh the credibility of witnesses or make determinations regarding their believability, as that is a function for the trier of fact. However, in a patent case the Court may evaluate a witness's testimony at the summary judgment stage by determining whether or not the testimony alone can surmount the hurdle that the clear and convincing standard imposes in proving patent invalidity. Finnigan, 180 F.3d at 1370. Applying that standard, the Court finds that Defendants have failed to meet their burden. The Court finds that no reasonable juror could rely on the evidence presented by Defendants to find by clear and convincing proof that either the ABB/CellNet Device or the Innovatec Device disclosed each and every claim of Plaintiff's patent in a manner to entitle Defendants to an invalidity defense.

Defendants' allegations regarding the ABB/CellNet Device rest upon the testimony of Steve Grady, Mark Howell, Dale Bickford, Ruben Salazar, John Wambaugh, William Vogel, Ralph Abbott, Stephen C. Hadden, and Richard Alexander. Mr. Grady and Mr. Howell were former employees of Defendant San Diego Gas & Electric. Mr. Bickford is an employee of General Electric ("GE"), which is one of TransData's competitors and is indemnifying Oklahoma Gas & Electric ("OG&E"). Mr. Salazar works for Landis+Gyr,

2

manufacturer of products accused of infringing Plaintiff's device. Landis+Gyr has signed a Joint Defense Agreement with other Defendants and meter manufacturers and a Common Legal Interest Agreement with Silver Springs Network. Silver Springs Network is indemnifying OG&E, and Landis+Gyr is indemnifying Defendants Oncor and CoServ. Mr. Wambaugh was an employee of CellNet Data Systems, and is currently employed as a consultant to electric utilities. He consulted for Defendants in this case and was paid by one defense firm $500 per hour for work and another defense firm $275 an hour for defense work. Mr. Vogel was a former employee of CellNet Data Systems, which is now part of Landis+Gyr. He went on to found a company known as Trilliant, which is indemnifying Defendant Denton Municipal Electric. Mr. Abbott is a consultant for the Defendants in this litigation. He has previously consulted with and sold advice to electric utilities. He has also consulted for GE, Itron, and CellNet Data, which is now part of Landis+Gyr, all of which are indemnitors for Defendants in this litigation. Mr. Abbott also has a prior relationship with Defendant San Diego Gas & Electric. Mr. Hadden is a consultant to the energy industry and makes his living based upon utility companies hiring him as a consultant. He previously consulted for Defendant San Diego Gas & Electric and has provided consulting services to Defendant Texas-New Mexico Power, GE, Landis+Gyr, and Itron, all of which are indemnitors in this litigation. Mr. Alexander has previously worked as a consultant for Defendant San Diego Gas & Electric.

Given these significant ties to the Defendants in this litigation, the ability of the witnesses to provide unbiased testimony is questionable. Certainly, it must be treated with

great skepticism. See Woodland Trust v. Flowertree Nursery, Inc., 148 F3d 1368, 1371 (Fed. Cir. 1998):

> [T]here is a very heavy burden to be met by one challenging validity when the only evidence is the oral testimony of interested persons and their friends, particularly as to long-past events. Corroboration of oral evidence of prior invention is the general rule in patent disputes. "Throughout the history of the determination of patent rights, oral testimony by an alleged inventor asserting priority over a patentee's rights is regarded with skepticism, and as a result, such inventor testimony must be supported by some type of corroborating evidence."

(quoting Price v. Symsek, 988 F.2d 1187, 1194 (Fed. Cir. 1993).

Given the interested party nature of the witnesses listed by Defendants for the ABB/CellNet Device, some additional documentary corroboration is required before that testimony can satisfy Defendants' burden of proving invalidity by clear and convincing evidence. See Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 308 F.3d 1167, 1189 (Fed. Cir. 2002) ("Uncorroborated oral testimony by interested parties 'is insufficient as a matter of law to establish invalidity of [a] patent.'") (quoting Finnigan Corp., 180 F.3d at 1370)). Defendants argue that the witnesses' testimony each corroborates testimony of another. However, testimony standing alone or uncorroborated testimony of one interested witness cannot corroborate the testimony of another interested witness. Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc., 322 F.3d 1335, 1350 (Fed. Cir. 2003).

The documentary material relied on by Defendants cannot satisfy their burden of proof. First, as Plaintiff notes, no party has one of the allegedly prior art ABB/Cellnet

meters. Thus, many of the documents that Defendants' experts cite to relate to an unmodified meter. Second, other items, such as the Wambaugh journal excerpts, simply do not identify what modifications were made or how the components were combined or how the device worked. The index cards relied upon by Defendants do not describe the structure or functionality of the device; they simply indicate that solid state meters equipped with a module existed, but not sufficient to identify that that device addressed the claims in Plaintiff's patent.

Finally, to the extent Defendants rely on the Alexander report, it is an inadmissible document. Mr. Alexander's report is nothing more than a compilation of information obtained from other people, and consequently in this proceeding it is hearsay. Hearsay is insufficient evidence to satisfy the grist of the summary judgment mill. Thomas v. Int'l Bus. Machs., 48 F.3d 478, 485 (10th Cir. 1995). The other documentary materials relied on by Defendants are lacking in any detail about the nature of the device allegedly promoted or in use. In short, these documents fail to identify with sufficient specificity the functionality and operations of the ABB/CellNet Device in such a manner as to find it would render Plaintiff's patent invalid.

In support of his opinions regarding the Innovatec Device, Dr. Mihran relies upon the testimony of Ralph Abbott, Stephen C. Hadden, Eric Dresselhuys, Lance Ehrke, Eric Smith, John Lofgren, and Dean Holzberger. Mr. Dresselhuys was an executive with Innovatec and is currently an executive at Silver Springs Network, which is indemnifying Defendant OG&E in this litigation. Mr. Ehrke was also an executive at Innovatec. Mr. Ehrke's bias against

Plaintiff is clear from the deposition excerpts provided by Plaintiff. Mr. Ehrke was uncooperative and refused to answer questions when questioned by counsel for Plaintiff. In contrast, when asked similar questions by Defendants, Mr. Ehrke's willingness to testify changed dramatically–he provided detailed explanations and opinions about the Innovatec Device. Mr. Ehrke's refusal to permit Plaintiff's counsel to explore his knowledge because of his unwillingness to cooperate demonstrates his prejudice against Plaintiff. Mr. Smith also worked for Innovatec. He has consulted with Defendant OG&E and continues to seek work from Defendant utilities today. Mr. Lofgren is an employee of L.S. Research Company, a company that worked with Innovatec in the late 90's. Mr. Holzberger is an employee at Brooks Stevens which worked for Innovatec.

As with the witnesses related to the ABB/CellNet Device, Plaintiff has offered sufficient evidence through deposition testimony and other materials to demonstrate the bias and interested status of each of these witnesses. Thus, there must be some documentary evidence to corroborate their testimony. As Plaintiff notes, the 1996 trade show brochure simply does not list an electric meter or any details of the alleged device. While Mr. Ehrke's letter to Mr. Hadden describes an electric meter, the device as described by these individuals was significantly different from Plaintiff's device, at a minimum in the fact that the antenna in that device would have been external. It has been established as a requirement in this case that any competing device have an internal antenna.

The Lockwood memorandum is another document which is nothing more than hearsay within hearsay because it is based on conversations among witnesses which have been

reduced to paper. The device on which Defendants rely, which is allegedly an example of the prior art device, has sufficient questions about it that it cannot satisfy Defendants' burden of proving by clear and convincing evidence that it existed in 1996. In short, as with the ABB/CellNet Device, Defendants have failed to come forward with admissible evidence to corroborate the testimony of the interested witnesses they offer in support of their prior art device. Consequently, the Court finds no reasonable jury could find that Defendants could satisfy their burden of proving by clear and convincing evidence that the Innovatec Device was prior art and renders Plaintiff's patent invalid.

For the reasons set forth herein, Plaintiff TransData's Motion for Partial Summary Judgment of No Invalidity Relating to the Alleged ABB/CellNet and Innovatec Devices (Dkt. No. 518) is GRANTED. Defendants will not be permitted to rely on either the ABB/CellNet Device or the Innovatec Device as establishing prior art, rendering Plaintiff's patents invalid in the trials in this matter.

IT IS SO ORDERED this 28th day of August, 2015.

_/s/ Robin J. Cauthron_
ROBIN J. CAUTHRON
United States District Judge